```
                    UNITED STATES DISTRICT COURT
                              FOR THE
                         DISTRICT OF VERMONT


UNITED STATES OF AMERICA      :
                              :
                              :       Case No. 2:11-cr-87
       v.                     :
                              :
                              :
TERRY VAN MEAD,               :
                              :
              Defendant.      :
```

## Memorandum Opinion & Order

Defendant Terry Van Mead pled guilty to two counts of a three count indictment, admitting to failing to register as a sex offender under the Sex Offender Registration and Notification Act, 18 U.S.C. § 2250(a), and to knowingly possessing stolen firearms in violation of 18 U.S.C. §§ 922(j), 924(a)(2). In connection with the firearms offense, the Presentence Investigation Report ("PSR") recommends that Mead's base offense level be set at 24, owing to two prior felony convictions for crimes of violence. *See* U.S. Sentencing Guidelines Manual ("USSG") § 2K2.1(a)(2) (2011). Mead argues Section 2K2.1(a)(2) is inapplicable, contending his prior New York conviction for "criminal sexual act in the third degree," N.Y. Penal Law ("NYPL") § 130.40(2)(2005), cannot be considered a predicate crime of violence. The government agrees with the PSR's recommendation on the issue. The Court heard argument

related to this and other threshold sentencing matters on June 11, 2012.[1] In light of Second Circuit precedent, the Court agrees with the PSR's recommendation that Mead's conviction under NYPL § 130.40(2) should be treated as a Section 2K2.1 "crime of violence."

**Background**

Section 2K2.1 of the Guidelines assigns weight to offense conduct in certain crimes involving firearms. Under Section 2K2.1(a)(2), a defendant who committed such an offense "subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense" should be assigned a base offense level of 24. USSG § 2K2.1(a)(2). "Crime of violence," as the term is used in Section 2K2.1, is defined by a different guideline, USSG § 4B1.2. *See* USSG § 2K2.1 cmt. n.1. Section 4B1.2's definition of "crime of violence" is nearly the carbon copy of the definition of "violent felony" under the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B). *Compare* § 4B1.2(a), *with* § 924(e)(2)(B). Both concern felonies punishable by terms of imprisonment of more than one year that fit one of two molds.

---

[1] The parties raised several other objections to the PSR's Guidelines calculation in their sentencing memoranda and at the June 11 hearing. Those items are not addressed in this written opinion. The Court will resolve any outstanding questions at Mead's final sentencing hearing.

*See* § 4B1.2(a); § 924(e)(2)(B). They may have "as an element, the use, attempted use, or threatened use of physical force against the person of another." § 4B1.2(a)(1); § 924(e)(2)(B)(i). That prong is called the "physical force element clause" in this opinion. Alternatively, they may be "burglary of a dwelling, arson, or extortion, involve[] use of explosives, *or otherwise involve[] conduct that presents a serious potential risk of physical injury to another.*" § 4B1.2(a)(2) (emphasis added); *see* § 924(e)(2)(B)(ii) (differing only in using the word "burglary" rather than "burglary of a dwelling"). The italicized phrase is commonly described as the "residual clause." *United States v. Daye*, 571 F.3d 225, 230 (2d Cir. 2009). The crimes listed just before the residual clause-burglary, arson, extortion, and explosives crimes—are referred to collectively here as the "exemplar crimes." *See id.*

Mead sustained a prior conviction for third degree criminal sexual act in Washington County, New York on March 21, 2006. The state statute of conviction is a statutory rape provision, which provided:

> A person is guilty of criminal sexual act in the third degree when . . . [b]eing twenty-one years old or more, he or she engages in oral sexual conduct or anal sexual conduct with a person less than seventeen years old.

3

NYPL § 130.40 (2005).[2] The parties agree that since NYPL § 130.40(2) does not have as an element the use of physical force, and since statutory rape is not an exemplar crime, it could only be a crime of violence by way of the residual clause.

In determining whether a defendant's prior crime of conviction falls under the residual clause, the sentencing court employs a "categorical approach." *See James v. United States*, 550 U.S. 192, 201-02 (2007). It views the statute "generically . . . in terms of how the law defines the offense and not in terms of how an individual offender might have committed it on a particular occasion." *Begay v. United States*, 553 U.S. 137, 141 (2008). The Court looks to two characteristics of the law. First, whether "as a categorical matter, it presents a serious potential risk of physical injury to another." *Sykes v. United States*, 131 S. Ct. 2267, 2273 (2011). The focus in the risk analysis is on the "conduct encompassed by the elements of the offense, in the ordinary case," *James*, 550 U.S. at 208, and the risks posed by the exemplar crimes may be a guide, *see United States v. Baker*, 665 F.3d 51, 56 (2d Cir. 2012).

Second, the crime must be qualitatively similar to the exemplar crimes. The "ACCA limits the residual clause to crimes

---

[2] The provision was last amended in 2003, so it remains the same today as it was on the date of Mead's conviction. *See* 2003 N.Y. Sess. Laws § 18 (McKinney).

'typically committed by those whom one normally labels armed career criminals,' that is, crimes that 'show an increased likelihood that the offender is the kind of person who might deliberately point the gun and pull the trigger.'" *Sykes*, 131 S. Ct. at 2275 (quoting *Begay*, 553 U.S. at 146). At least as to strict liability, negligence, or recklessness offenses, it may be helpful to determine whether the statute penalizes "purposeful, violent, and aggressive" conduct of the sort characterized by the exemplar crimes. *Sykes*, 131 S. Ct. at 2276.

Potentially controlling the analysis in this case is *United States v. Daye*, in which the Second Circuit determined that a statutory rape offense located in Vermont's law against sexual assault of a child, Vt. Stat. Ann. tit. 13, § 3252(3) (1986), was categorically a violent felony under the ACCA's residual clause. 571 F.3d 225. The version of the Vermont law analyzed in *Daye* prohibited any sexual act by one person with another person who "'is under the age of 16, except where the persons are married to each other and the sexual act is consensual.'" *Id.* at 229 (quoting Vt. Stat. Ann. tit. 13, § 3252(3) (1986)).

## Discussion

Mead advances two principal arguments that the reasoning in *Daye* does not govern his case. He first contends that *Daye*,

5

which dealt with the ACCA, should not be extended to interpret the residual clause in USSG § 4B1.2. And even if *Daye* were to apply, he argues, differences between the New York and Vermont statutes warrant finding the New York statute categorically not a crime of violence. The government urges the opposite conclusion: that *Daye* both reaches Section 4B1.2's residual clause and requires finding that the New York law categorically is a crime of violence. The Court first takes up the issue of *Daye*'s applicability, and then, finding it does apply, discusses whether it requires the Court to construe NYPL § 130.40(2) as a crime of violence.

I.   **Whether *Daye* Applies to USSG § 4B1.2's Residual Clause**

Mead argues *Daye* should not apply because commentary to Section 4B1.2 indicates that statutory rape was rejected as a crime of violence under that guideline's definition. Specifically, Application Note 1 to Section 4B1.2 contains several illustrative examples of crimes of violence that are not provided in the text of the ACCA. *Compare* § 4B1.2 cmt. n.1 (including "murder, manslaughter, kidnapping, aggravated assault, forcible sex offenses, robbery . . . [and] extortionate extension of credit," in addition to the exemplar crimes), *with* 18 U.S.C. § 924(e)(2)(B)(ii). Statutory rape is not listed among these added examples, and Mead argues the examples are

6

also different in character than statutory rape.  Statutory rape's absence is more conspicuous when contrasted with the application notes defining "crime of violence" in USSG § 2L1.2, the offense characteristic provision for unlawfully entering or remaining in the United States.  In the commentary to that guideline, the U.S. Sentencing Commission chose to list statutory rape as a "crime of violence."  USSG § 2L1.2 cmt. n.1(B)(iii).  The upshot, Mead argues, is the Commission generally considered whether statutory rape is a crime of violence throughout the Guidelines, but chose not to include it in Section 4B1.2.  For that reason, even though the Second Circuit determined that statutory rape may be an ACCA violent felony, its ruling should not apply when considering Section 2K2.1(a)(2), which is linked to the residual clause in Section 4B1.2(a)(2).

Mead's argument raises interesting questions but ultimately does not persuade the Court.  Even while Application Note 1 clarifies that Section 4B1.2 "includes" the additional examples of offenses listed, it reiterates the broad residual clause language encompasses "[o]ther offenses."  *See* § 4B1.2 cmt. n.1.  Notwithstanding the additional commentary in Application Note 1, the residual clauses in Section 4B1.2 and the ACCA are "identical."  *United States v. Brown*, 514 F.3d 256, 268 (2d Cir.

7

2008). A case involving "'one phrase frequently is found to be persuasive in interpreting the other phrase.'" *Id.* (internal citation omitted) (quoting *United States v. Palmer*, 68 F.3d 52, 55 (2d Cir. 1995)). For the Court to hold otherwise in this case would be in tension with that settled approach.

For its part, Section 2L1.2 is an imperfect foil for Section 4B1.2 because it does not have the residual clause at all. *Compare* USSG § 2L1.2 cmt. n.1(B)(iii), *with* USSG § 4B1.2(a)(2). Apart from naming several specific crimes, like statutory rape, Section 2L1.2 only contains the equivalent of the physical force element clause, covering "any other offense under federal, state, or local law that has as an element the use, attempted use, or threatened use of physical force against the person of another." § 2L1.2 cmt. n.1(B)(iii). The absence of the residual clause makes Section 2L1.2 significantly different than Section 4B1.2. As the Supreme Court elaborated with respect to the ACCA version of the physical force element clause, it "lacks a broad residual provision, thus making it necessary to specify exactly what types of offenses . . . are covered by its language." *James*, 550 U.S. at 198 (rejecting the argument that because attempt offenses are explicitly contemplated in the statutory language of 18 U.S.C. § 924(e)(2)(B)(i) they were intended to be excluded by omission

8

from the residual clause of § 924(e)(2)(B)(ii)).  The residual clause, by contrast, has "'expansive phrasing' . . . [that] 'points directly away from the sort of exclusive specification' that [the defendant] would read into it."  *Id.*(quoting *Chevron U.S.A. Inc. v. Echazabal*, 536 U.S. 73, 80 (2002)).

In addition, the ACCA and Section 4B1.2, which focus on recidivist firearms offenders, deal with different policy considerations than Section 2L1.2, which applies to those who who enter or remain in the United States unlawfully.  *Cf. Begay*, 553 U.S. at 146 ("As suggested by its title, the Armed Career Criminal Act focuses upon the special danger created when a particular type of offender—a violent criminal or drug trafficker—possesses a gun.").  In light of the differences in text and purpose between the two guidelines, the Court finds it speculative to read significance into statutory rape's explicit listing in one and not in the other.  More persuasive is the practice of interpreting Section 4B1.2's and the ACCA's residual clauses in harmony.

**II.   Whether Differences between the New York and Vermont Statutes Distinguish *Daye***

Mead also argues *Daye* should be distinguished based on the differences between the Vermont statute construed there, with its age of consent of 16, and the New York statute at issue here, with its age of consent of 17.  However, he provides no

argument to support his claim that a statute like NYPL § 130.40(2) reaches substantially different conduct than the Vermont offense addressed in *Daye*. Nor does *Daye* clearly articulate any limit to its holding, such as that a conviction for a sexual act involving a victim who is 16 years old, rather than 15 or younger, would not qualify as a crime of violence.

The Court's focus, when considering whether a statute is categorically a crime of violence, is on whether the "conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208. Thus, the hypothetical "unusual cases in which even a prototypically violent crime might not present a genuine risk of injury," do not prevent finding that an offense is a categorical crime of violence. *Id.* In *Daye*, the Second Circuit determined that statutory rape involving any victim under the age of sixteen will in the ordinary case pose the requisite risk. 571 F.3d at 230-32. Thus, to distinguish *Daye*, the Court would be required to conclude that NYPL § 130.40(2), in the ordinary case, presents a dispositively lower risk of injury to the victim than the Vermont statute. Similarly, the *Daye* Court found the Vermont law to criminalize purposeful, violent, and aggressive conduct along the lines of the exemplar crimes. 571 F.3d at 232-34 ("At a minimum, we have no doubt

that a typical instance of this crime will involve conduct that is at least as intentionally aggressive and violent as a typical instance of burglary." *Id.* at 234.). The Court would need to locate some reason to believe that the typical conduct outlawed by the New York statute does not share the same similarities. *See Begay*, 553 U.S. at 144-45.

One could read *Daye* as relying to a degree on the fact that the Vermont law did not apply to victims aged 16 or older. It notes that "Vermont's statute . . . applies only to children and young teens-in the version applicable here, to those fifteen years old and younger." *Daye*, 571 F.3d at 231. It frequently refers to victims of statutory rape as "children." *See, e.g.*, *id.* at 230-31 ("The infliction of a sexual act upon a child by an adult clearly qualifies" for the level of risk of physical injury required under the residual clause). However, the Court does not believe the *Daye* Court's reasoning turned on Vermont's age limit. The opinion is certain to clarify that, "[m]ore importantly," unlike other courts the Second Circuit does not find the risk of injury to young victims from sexual acts the only potentially serious physical injury that may result from statutory rape. *Id.* at 231. Rather, "[w]e must also consider the risk of injury traceable to the fact that the violation of statutes criminalizing sexual contact with victims who, for

reasons of physical or emotional immaturity, are deemed legally unable to consent '*inherently* involves a substantial risk that physical force may be used in the course of committing the offense.'" *Id.* at 231-32 (quoting *Chery v. Ashcroft*, 347 F.3d 404, 408 (2d Cir. 2003)). With regard to the similarity in kind between the Vermont statute and the exemplar crimes, the *Daye* Court made a similar point, noting "an intentional sexual act with a person who is, in fact, under the age of consent" is by nature purposeful, and "sexual contact between adults and children create a substantial likelihood of forceful, violent, and aggressive behavior on the part of the perpetrator." 571 F.3d at 234.

Those sections of the opinion illustrate that *Daye* relies to a significant measure on the victim's legal inability to consent, without placing clear weight on the fact that the Vermont law applied only to victims younger than 16.

Additionally, the maximum age of the victim is not the only difference between the New York and Vermont laws. The version of the Vermont statute examined in *Daye* by its terms could apply to a teenage defendant having sexual intercourse with a consenting partner of the same age. *See* Vt. Stat. Ann. tit. 13, § 3252(3) (1986); *Daye*, 571 F.3d at 229 n.5 (describing that the statute was amended in 2005 to exempt consensual sex acts

between a person under 19 and another older than 15). Here, by contrast, NYPL § 130.40(2) is more limited. It only applies if the perpetrator is "twenty-one years old or more." NYPL § 130.40(2). While New York permits victims to be as much as one year older than in Vermont, it also eliminates the possibility that a teenager (or a twenty-year-old) will be prosecuted for sexual conduct with a teenager. In that way, it is arguably even more targeted to "[t]he infliction of a sexual act upon a child by an adult," *Daye*, 571 F.3d at 230, than the Vermont statute construed in *Daye*. At the least, the differences in the New York law, as applied in the ordinary or typical case, do not rise to a level that would warrant reaching a different result.

The Court finds NYPL § 130.40(2) is categorically a crime of violence within Section 4B1.2's residual clause.[3] It therefore is a crime of violence for purposes of Mead's base offense level calculation in Section 2K2.1.

---

[3] The government had argued in the alternative that the Court could apply the modified categorical approach to determine whether Mead's charged conduct by itself fit the mold of a crime of violence, even if one could violate NYPL § 130.40(2) in other ways that do not. *See generally Taylor v. United States*, 495 U.S. 575, 602 (1990). Since the Court finds NYPL § 130.40(2) categorically meets the definition of a crime of violence, it need not decide whether turning to a modified categorical approach otherwise would have been appropriate in this instance.

Dated at Burlington, in the District of Vermont, this 2nd day of August, 2012.

/s/William K. Sessions III  
William K. Sessions III  
U.S. District Court Judge